1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FREDRICK J. BENSON,                    )
                                       )
            Petitioner,                )          3:05-cv-00464-GMN-VPC
                                       )
vs.                                    )          **ORDER**
                                       )
MICHAEL BUDGE, *et al.*,               )
                                       )
            Respondents.               )
_____)

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Fredrick J. Benson, a Nevada prisoner.  ECF No. 14.

I.  FACTUAL AND PROCEDURAL HISTORY

On February 29, 2000, the State of Nevada filed a criminal complaint in the Justice Court of the Las Vegas Township, Clark County, Nevada, charging Benson with conspiracy to commit robbery, robbery with use of a deadly weapon, and murder with use of a deadly weapon.  On June 28, 2000, Benson waived his right to a preliminary hearing, with counsel advising the court that they had negotiated a plea agreement.  On July 6, 2000, the State filed a notice of intent to seek the death penalty against Benson.

On July 18, 2000, Benson filed a pro se motion for the appointment of new counsel based on an assertion that counsel had failed to conduct any investigation in aid of mitigating his sentence.  At his arraignment on July 27, 2000, Benson entered a plea of not guilty and rescinded his motion to discharge counsel.

On October 4, 2000, Benson filed another pro se motion to dismiss counsel, this time alleging that counsel had not been investigating his case, that counsel had not spoken to him since July 31, 2000, and that he had not seen the discovery from the State.  The court conducted a hearing on the motion and denied relief on the basis that the trial was not scheduled until the following May,

and there was sufficient time for counsel to complete the investigation and meet with Benson. Nonetheless, the Clark County Public Defender's office subsequently removed the counsel assigned to Benson (Stephen Immerman) and substituted two other attorneys (Drew Christensen and Willard Ewing).

At a calendar call on May 11, 2001, counsel requested and obtained a continuance of the trial to January 2002.  The defense then filed a several pre-trial motions, including a suppression motion relative to a statement Benson gave to police in February 2000, two discovery motions, a motion in limine, two motions to inspect and test evidence, a motion for a jury questionnaire, a motion to dismiss the notice of intent to seek the death penalty, a motion to exclude victim impact evidence, and a motion to declare the Nevada death penalty unconstitutional.

On April 29, 2002, the state district court held an evidentiary hearing with respect to the motion to suppress and, at the conclusion of the hearing, denied the motion.  The following day Benson entered a guilty plea to first degree murder in exchange for a life sentence without the possibility of parole.  At the plea canvass, Benson admitted to killing Henry Zegler by shooting him with a shotgun while in the course of taking money from him.

On June 26, 2002, counsel Christensen advised the state district court that Benson wanted to withdraw his guilty plea.  The court appointed special counsel, Betsy Allen, who assisted Benson with filing a motion to withdraw on July 31, 2002.  As grounds, Benson claimed that counsel had failed to advise him that, by pleading guilty, he waived his right to test, via an appeal, the validity of the evidence the State would have presented against him.

After a hearing on August 28, 2002, the court denied the motion.  Benson then filed a pro se motion to dismiss counsel (requesting that Allen be appointed to represent him), a "writ of mandate" (alleging that, immediately after entering his guilty plea, he explained to counsel he did not understand that he was waiving his right to a direct appeal), and a motion titled "Interlocutory Review Pursuant to 28 U.S.C.A. 1292 (B) and Rule 5(A) of the Nevada Rules of Appellate Procedure - Motion to Suppress - Motion to withdraw guilty plea."  On October 11, 2002, the court

2

denied the motions (except for the motion to appoint Allen) and entered a judgment of conviction.

Benson appealed.  On appeal, Benson argued that his guilty plea was invalid and that he had received ineffective assistance of counsel.  On January 28, 2004, the Nevada Supreme Court affirmed the judgment of conviction.  On November 16, 2004, Benson filed a petition for post-conviction relief in the state district court, raising several claims of ineffective assistance of counsel. That petition was denied on February 18, 2005.  Benson appealed.  On June 16, 2005, the Nevada Supreme Court entered an order affirming the decision of the lower court.

On August 15, 2005, this court received Benson's petition for writ of habeas corpus.  On January 17, 2006, the court granted Benson's motions to proceed *in forma pauperis* and appoint counsel, and directed the clerk file the petition.  On December 13, 2007, Benson filed an amended petition.

On February 2, 2009, this court granted Benson a stay and administratively closed this federal habeas action so Benson could file a state habeas petition to exhaust certain grounds in his amended federal petition.  On January 13, 2012, Benson moved to reopen the instant proceedings. Respondents filed a motion to dismiss, alleging that some of the grounds in the amended petition were procedurally defaulted.

On February 7, 2013, this court denied the motion with respect to the respondents' procedural default arguments on Grounds Two(b)(1) and 3(a), but granted the motion with respect to the procedural default arguments on Grounds One(a), (b), (c), (d) and (e).

Respondents filed an answer to the remaining claims on March 26, 2013.  Benson filed his reply on July 10, 2013.

II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

/ / /

3

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For any habeas claim that has not been adjudicated on the merits by the state court, the federal court reviews the claim *de novo* without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1). *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). *See also James v. Schriro*, 659 F.3d 855, 876 (9th Cir. 2011) (noting that federal court review is *de novo* where a state court does not reach the merits, but instead denies relief based on a procedural bar later held inadequate to foreclose federal habeas review). The Court in *Lockyer v. Andrade*, 538 U.S. 63 (2003), rejected a Ninth Circuit mandate for habeas courts to review habeas claims by conducting a *de novo* review prior to applying the "contrary to or

4

1    unreasonable application of" limitations of 28 U.S.C. § 2254(d)(1).  *Lockyer*, 538 U.S. at 71.  In

2    doing so, however, the Court did not preclude such an approach.  "AEDPA does not require a federal

3    habeas court to adopt any one methodology in deciding the only question that matters under §

4    2254(d)(1) – whether a state court decision is contrary to, or involved an unreasonable application of,

5    clearly established Federal law." *Id.*

6           III.  ANALYSIS OF CLAIMS

7                    **Ground Two**

8           In Ground Two, Benson challenges his state court conviction and sentence on the grounds

9    that he was deprived of effective assistance of counsel in violation of his rights under the Sixth and

10   Fourteenth Amendment of the Constitution.  The particular shortcomings of counsel alleged by

11   Benson are the following.  Counsel failed to inform Benson of the direct and material consequences

12   of accepting a guilty plea – in particular, the limitations on his right to appeal the conviction.

13   Counsel failed to communicate with him, review discovery, investigate the case, and advise him of

14   the evidence pertinent to his defense.  Counsel coerced or placed undue influence upon him in order

15   to elicit a guilty plea.

16           To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth

17   Amendments, a convicted defendant must show that 1) counsel's representation fell below an

18   objective standard of reasonableness under prevailing professional norms in light of all the

19   circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable

20   that, but for counsel's errors, the result of the proceeding would have been different.  *Strickland v.*

21   *Washington*, 466 U.S. 668, 687–94 (1984).  A habeas petitioner may attack the voluntary and

22   intelligent character of a guilty plea by showing that he received ineffective assistance from counsel

23   in connection with the entry of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  To

24   demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a

25   petitioner must show both that counsel's advice fell below an objective standard of reasonableness as

26   well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled

                                                      5

1  guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985)

2  (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective

3  assistance of counsel).

4                                 *a.  Failure to Inform Benson Regarding Appeal Rights*

5          Benson alleges that he specifically asked counsel, prior to entering his plea, whether he

6  would be able to appeal his conviction.  According to Benson, counsel responded in the affirmative,

7  but failed to advise him that his appeal rights would be limited by the guilty plea agreement and that

8  "he would not be able to challenge the validity of the State's evidence that would have been

9  presented against him."  ECF No. 48, p. 5.  He further claims that counsel were ineffective in failing

10  to advise him of the legal consequences of admitting on the record to the truth of the statements he

11  made to the police.

12          Benson's guilty plea agreement contained the following provision:

13          By entering my plea of guilty, I understand that I am waiving and forever giving up
        the following rights and privileges. . . .  The right to appeal the conviction, with the

14          assistance of an attorney, either appointed or retained, unless the appeal is based upon
        a reasonable constitutional jurisdictional or other grounds that challenge the legality

15          of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035.

16  ECF No. 17, p. 8-9.[1]  The agreement also set out the terms of the negotiation, Benson's rights, the

17  nature of the crime, and the nature of the sentence.  *Id.*, p. 2-10.

18          At the plea canvass, Benson stated he understood the charge against him and his rights, and

19  understood that he was not eligible for probation and must go to prison for life, without possibility of

20  parole.  ECF No. 17-2, p. 3-5.  He informed the court that his attorneys had explained the deal to him

21  and had answered all of his questions.  *Id.*

22          As noted above, Benson asserted counsel's failure to adequately advise him of his appeal

23  rights as the basis for his motion to withdraw his guilty plea.  ECF No. 17-5.  At the hearing on the

24  motion, the state district court judge noted that Benson had failed to substantiate his claim and that

25  

26          [1]  References to page numbers in the record are based on CM/ECF pagination.

1   he had signed the guilty plea agreement and had been canvassed by the court when he entered his

2   plea.  ECF No. 17-9, p. 3.  On that basis, the court denied the motion.  *Id.*

3          On direct appeal, the Nevada Supreme Court rejected, as unsupported by the record,

4   Benson's claim that his guilty plea was invalid because counsel had misinformed him of his rights to

5   appeal.  ECF No. 18-5, p. 3-5.  With respect to Benson's argument that counsel had been ineffective,

6   the court stated as follows:

7              Benson claims only that his counsel incorrectly advised him as to whether he
           could appeal the facts of this case.  His claim is not supported by the record, nor has
8          he stated specifically how counsel advised him and why counsel's advice was wrong.
           Because the record that Benson has provided this court does not contain strong and
9          convincing proof to the contrary, we must conclude that the district court correctly
           assessed counsel's performance and determined that they were effective and fully
10         discharged their duties.

11  *Id.*, p. 5-6.

12         Under well-established law, the representations made at a plea hearing and the findings made

13  by the judge in accepting the plea "constitute a formidable barrier in subsequent collateral

14  proceedings," "[s]olemn declarations in open court carry a strong presumption of verity," and the

15  "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

16  dismissal."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

17         Here, Benson offers little more than his own self-serving allegations to support his claim that

18  counsel misled him with respect to his appeal rights.  Benson suggests that his limited education and

19  the trial court's failure to specify what appellate rights he was waiving add credence to his claim.

20  Those factors do not, however, overcome the complete lack of evidentiary support for his claim that

21  counsel failed to sufficiently explain his limited appeal rights to him.  Moreover, Benson's assertion

22  that counsel led him to believe that he could waive his right to a trial but still appeal the facts

23  underlying his case strains credulity.

24         Lastly, counsel were not ineffective in failing to advise Benson of the legal consequences of

25  admitting on the record to the truth of the statements he made to the police.  Prior to making that

26  admission, Benson had admitted, as part of his guilty plea, to the basic facts supporting the first

7

degree murder charge.  Benson does not specify what additional prejudice resulted from admitting the truth of his statements to the police.

Ground Two(a) is denied.

### b.  Failure to Communicate, Review Discovery, Investigate, and Advise

Under Ground Two(b), Benson alleges that, because their focus was on negotiating the case, counsel failed to investigate the facts of the case and develop a defense strategy.  In support of this sub-claim, he points to several months of inaction by his initial counsel and contends that, even after the case was assigned to different counsel within the Clark County Public Defender's office, the motions that counsel filed (with the exception of the motion to suppress) were "stock motions" routinely filed in capital cases.  According to Benson, his case involved "three co-defendants and several witnesses who provided differing statements to the police," as well as "confusing statements" made by the deceased victim.  ECF No. 48, p. 9-10.  Benson also argues that counsel neglected to investigate potential mitigating evidence that would support an argument for a sentence of life with the possibility of parole.

Absent from this claim is evidence establishing that Benson had a viable defense to the charges against him in light of his confession to the police and the corroborating statements from other witnesses.  ECF No. 16-24, p. 21-44.  As a practical matter, once Benson's motion to suppress his statement to the police was denied, further investigation into the facts underlying the crimes would have served little, if any, purpose.  Similarly, the proposed mitigating evidence that Benson now relies upon (ECF Nos. 18-19, 18-21) is not so compelling that it would have necessarily spared Benson from the death penalty, much less create a reasonable probability that he would have received a more favorable sentence than one life sentence without the possibility of parole had he

/ / /

/ / /

/ / /

/ / /

insisted on proceeding to trial.[2]  Thus, the portion of Ground Two(b) premised on counsel's alleged

failure to investigate the case and develop evidence is without merit.

Benson also alleges, under Ground Two(b), that counsel were ineffective by failing to object

to the State's withholding of potentially exculpatory evidence and by urging him to waive his

preliminary hearing.  The evidence to which Benson refers is a videotape of his confession, which,

according to him, would substantiate his claim that his statement was coerced and obtained while he

was under the influence of narcotics and alcohol.[3]  With respect to waiving the preliminary hearing,

Benson asserts that the hearing "could have served as a useful fact-finding tool to further develop

investigation."  ECF No. 48, p. 13.

The Nevada Supreme Court addressed both alleged deficiencies in Benson's first state post-

conviction proceeding:

> [A]ppellant claimed that trial counsel was ineffective for advising him to waive
> his rights to a preliminary hearing.  Specifically, appellant claimed that by waiving the
> preliminary hearing, his attorney did not inform him that he would be waiving his
> right to present witnesses, gather evidence and learn what evidence the State had prior
> to proceeding to trial.  Appellant does not explain how proceeding with the
> preliminary hearing would have assisted in his defense, and thus, he failed to
> demonstrate that he was prejudiced by counsel's performance.  Therefore, the district
> court did not err in denying this claim.
>
> . . .
>
> [A]ppellant asserted that his trial counsel was ineffective for failing to object to
> the district court's denial of appellant's review of "exculpatory evidence."
> Specifically, appellant claimed that review of the videotape of his voluntary statement
> would have shown that appellant was coerced with promises of leniency and/or that

---

[2]  In this regard, the court notes that, under Nevada law at the time Benson was sentenced, the court would have been required to impose additional terms of imprisonment equal to and consecutive to the terms prescribed by statute for the underlying crimes if Benson had been convicted of use of a deadly weapon in committing the murder and robbery.  See Nev. Rev. Stat. Ann. § 193.165 (version effective from 1973 till June 30, 2007).

[3]  Testimony at the hearing on Benson's motion to suppress established that, apparently due to the detective's unfamiliarity with new equipment, the videotape of the statement did not contain  any audio. ECF No. 16-25, p. 10-32.  However, the detective had recorded the audio of his interrogation of Benson on a separate tape machine.  *Id.*  It was that tape that was played at the suppression hearing and also presumably used for the transcription that is in the record before this court.  *Id.*; ECF No. 16-24, p. 25-44.

he was under the influence of drugs and alcohol.  There was no audio on the tape.
Appellant failed to demonstrate how the viewing of the videotape would have assisted
in his defense.  The detectives testified in an evidentiary hearing that they made no
promises to appellant, that his statement was voluntary, and that he was aware of his
rights to remain silent and have counsel present.  The district court listened to another
audio recording of appellant's voice and determined that there was no indication that
appellant was under the influence of alcohol or drugs during his voluntary statement.
Thus, the district court did not err in denying this claim.

ECF No. 18-17, p. 3-5.

The Nevada Supreme Court correctly applied the *Strickland* standard in rejecting Benson's

claims.  Having concluded that Benson could not show prejudice, the court was not obliged to

address whether counsel's performance was deficient.  *See Strickland*, 466 U.S. at 697 ("[T]here is

no reason for a court deciding an ineffective assistance claim . . . to address both components of the

inquiry if the defendant makes an insufficient showing on one.").

And, the court's decision to deny relief was not unreasonable, nor was it based on an

unreasonable determination of the facts.  As with his complaints about counsel's failure to

investigate his case, Benson has not shown that a preliminary hearing would have assisted him in

preparing a defense that had any possibility of being successful at trial in light of the overwhelming

evidence of his guilt.  As for the videotape, he has not substantiated his claim that it would have

shown that he was coerced by police and/or intoxicated.  Mere speculation as to what the tape may

have revealed is not sufficient to demonstrate that counsel was ineffective in failing obtain it.  *Grisby*

*v. Blodgett*, 130 F.3d 365, 372-73 (9th Cir. 1997) (holding that claim of prejudice based on

speculation that evidence would have been in defense's favor could not support an ineffective

assistance claim).  Thus, in accordance with § 2254(d), Ground Two(b) must be denied to the extent

it is based on allegations that counsel was ineffective in failing to object to the State's withholding of

potentially exculpatory evidence and in waiving Benson's preliminary hearing.

Benson is not entitled to habeas relief with respect to Ground Two(b).

*c.  Coerced Plea*

Under Ground Two(c), Benson claims that counsel coerced him to enter a guilty plea by

placing him under duress.  He contends that he was not receptive to accepting a plea agreement, but

counsel used his (Benson's) father to change his mind, knowing that his father was a strong influence

on him.  He further alleges that his father was present in the courtroom on the day of his plea hearing

and counsel induced anxiety in his father by telling him that his son needed to plead guilty to avoid

the death penalty.  Benson claims that "[b]ecause of his father's anxiety and bad health" at the

moment counsel presented the plea agreement to him, he "was afraid not to sign the agreement and,

therefore, acquiesced."  ECF No. 48, p. 17.

The Nevada Supreme Court adjudicated this claim in Benson's first state post-conviction

proceeding as follows:

> [A]ppellant claimed that trial counsel was ineffective for using "scare tactics"
> on appellant and his father in order to coerce appellant to plead guilty.  Specifically,
> appellant claims that his counsel informed him and his father that appellant could
> receive the death penalty if he chose to go to trial.  Appellant was facing charges for
> conspiracy to commit robbery, robbery with the use of a deadly weapon, and murder
> with use of a deadly weapon.  If convicted, appellant could have faced a sentence of
> death. [fn.5: NRS 200.030(1)(b), (4)(a).] Appellant confessed in a voluntary
> statement, which the district court had ruled would be admissible as evidence.  In
> order for appellant's guilty plea to be knowing and voluntary, he had to be aware of
> the risk involved in proceeding with trial.  Trial counsel's candid advice about the
> maximum sentences upon proceeding to trial is not deficient.  Therefore, the district
> court did not err in denying this claim.

ECF No. 18-17, p. 5.

In support of this claim, Benson proffers a declaration from his aunt, Roberta Simon.  ECF

No. 18-19.  That declaration describes an episode wherein Ms. Simon drove Benson's father to the

courthouse to meet Benson.  *Id*., p. 3.  According to the declaration, Benson's attorney slammed

crime scene photographs on the table and threatened Benson's father that his son needed to "take the

deal" to avoid the death penalty.  *Id*.  The declaration further states that Benson's father "was crying

and begged [Benson] to take the plea deal," which Benson then signed "because he was concerned

for this father."  *Id*.

This declaration was not prepared until December 2007, more than five years after the

foregoing event allegedly took place.  In both Benson's amended petition and his reply herein, he

alleges that Benson's father was present in the courtroom just prior to his entering a plea and suggests that the episode described in Simon's declaration took place at that time.  ECF No. 14, p. 21; ECF No. 48, p. 17.  This conflicts, however, with the allegations contained in Benson's state post-conviction petition and his initial petition in this proceeding, wherein he alleges that, upon arriving at court on the morning he entered his plea, his attorneys informed him that his father was waiting to speak with him *by phone*.  ECF No. 6, p. 3; ECF No. 18-9, p. 18.  In those pleadings, it is the ensuing phone conversation with his father that Benson claims to have placed him under duress. *Id*.

In any case, as the Nevada Supreme Court reasonably concluded, Benson could have faced the death penalty if he insisted on going to trial.  There is no indication that counsel made any misrepresentations to Benson or Benson's father with respect to that potential outcome of his case.  In addition, Benson had admitted his guilt in a statement to the police, which the trial court had ruled would be admissible evidence at trial.  Thus, Benson cannot blame counsel for pursuing plea bargain under the terms counsel obtained.

In sum, there is virtually no dispute that the plea bargain was in Benson's best interest, thus counsel's efforts in advising him to enter a guilty plea did not fall below constitutional standards. *See McMann v. Richardson*, 397 U.S. 759, 770-71 (1970) (holding that the question is not whether counsel's advice to plead guilty is right or wrong, but whether "that advice was within the range of competence demanded of attorneys in criminal cases").  A lawyer's advice to plead guilty in the face of strong inculpatory evidence does not constitute ineffective assistance of counsel. *United States v. Cassidy*, 428 F.2d 383, 384 (9th Cir.1970).  Accordingly, the state court's conclusion that Benson was not denied his right to the effective assistance of counsel was not contrary to, nor an unreasonable application of, federal law and, therefore, Benson is not entitled to relief on this claim.

**Ground Three**

In Ground Three, Benson challenges his state court conviction and sentence on the grounds that he was deprived of effective assistance of counsel in relation to his motion to withdraw his

guilty plea and his direct appeal – in essence, the portion of his case that was handled by Betsy Allen. With respect to his motion to withdraw his guilty plea, Benson contends that counsel was deficient in failing to adequately support the motion with briefing, affidavits, and evidence. Benson cites to the trial court's statements during the hearing on the motion, where it noted that counsel could have obtained affidavits to support the motion, but in their absence, the written plea agreement was the strongest evidence of petitioner's willingness to plead guilty. ECF No. 17-9, p. 3.

As for counsel's performance on appeal, Benson faults counsel's failure to raise claims with specificity and her omission of meritorious claims. Benson cites to the following footnote from the Nevada Supreme Court's decision on his direct appeal:

> We note that appellant's counsel has failed to provide this court with a transcript of the hearing conducted on the motion to withdraw guilty plea. . . . Thus, the record that appellant's counsel has provided this court does not disclose what occurred at the hearing, whether appellant's former counsel were called to testify, whether any other evidence was presented, or why the district court denied the motion.

ECF No. 18-5, p. 3.

In Benson's first state post-conviction proceeding, the Nevada Supreme Court rejected Benson's ineffective assistance of appellate counsel claim because Benson had "failed to demonstrate which claims counsel failed to properly argue, which claims were omitted, and whether omitted claims or arguments had a reasonable probability of success on appeal." ECF No. 18-17, p. 7.

In his reply filed herein, Benson specifies, for the first time in this proceeding, the evidence counsel should have submitted with his motion to withdraw his guilty plea. ECF No. 48, p. 19. According to Benson, counsel should have supported the motion with an affidavit from Roberta Simon, "detailing the extent to which trial counsel shouted at and took advantage of Mr. Benson's father;" "evidence of Mr. Benson's lack of education;" and Benson's prior motions to the court "detailing his problems with trial counsel's strategy to obtain a plea agreement rather than prepare for trial." *Id.*

For the reasons discussed above in relation to Ground Two(c), this court questions the

1   credibility of the allegations related to Benson's father and the extent to which his involvement in the

2   case undermined the voluntariness of Benson's plea.  The evidence regarding Benson's lack of

3   education consists of nothing more than the fact that he dropped out of school in the ninth grade.

4   And, given the inculpatory evidence against Benson, trial counsel's strategy to obtain a plea

5   agreement was eminently sound.  In sum, the evidence counsel omitted would not have been

6   sufficient to establish that Benson's plea was not knowing and voluntary.  *See Henderson v. Morgan*,

7   426 U.S. 637, 645 (1976) (stating that a guilty plea is voluntary if the defendant is informed of and

8   understands the elements of the offense); *United States v. Rubalcaba*, 811 F.2d 491,494 (9ᵗʰ Cir.

9   1987) (stating that solemn declarations in open court carry a strong presumption of verity).

10       That conclusion is also fatal to Benson's claim that Allen provided ineffective assistance of

11   counsel on appeal.  Given the favorable plea bargain Benson struck with the State and the trial

12   court's adherence to his constitutional rights in accepting his guilty plea, it is doubtful that counsel

13   could have presented a appeal that would have resulted in the Nevada Supreme Court setting aside

14   his conviction or sentence.  Thus, Benson has not established a reasonable probability that he would

15   have prevailed on appeal if not for appellate counsel's alleged error.  *See Strickland*, 466 U.S. at

16   688-97; *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

17       Ground Three is denied.

18       IV.  CONCLUSION

19       For the reasons set forth above, Benson's petition for habeas relief is denied.

20                              *Certificate of Appealability*

21       This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing

22   Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).

23   Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the

24   issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9ᵗʰ Cir.

25   2002).

26       Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a

1  substantial showing of the denial of a constitutional right."  With respect to claims rejected on the

2  merits, a petitioner "must demonstrate that reasonable jurists would find the district court's

3  assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484

4  (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA

5  will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the

6  denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

7          Having reviewed its determinations and rulings in adjudicating Benson's petition, the court

8  declines to issue a certificate of appealability for its resolution of any procedural issues or any of

9  Benson's habeas claims.

10         **IT IS THEREFORE ORDERED** that petitioner's first amended petition for writ of habeas

11  corpus (ECF No. 14) is DENIED.  The Clerk shall enter judgment accordingly.

12         **IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

13         Dated this 30th day of March, 2015.

14

15

16                                                   Gloria M. Navarro, Chief Judge
                                                     United States District Court
17

18

19

20

21

22

23

24

25

26

15